John D. Bennett, S.
This is a motion to dismiss a proceeding to abrogate an adoption on the ground that the court lacks jurisdiction of the subject matter, and that the petition fails to state facts sufficient to constitute a cause of action.
The petitioner in this proceeding is the foster father of the adopted child and the second husband of the natural mother. The infant is a child of the natural mother’s former marriage to the respondent. The infant, at the time of the natural mother’s remarriage in 1945, was a little over a year old. Since that time, and continuing after the petitioner’s adoption of the child in 1957, the infant has resided with his foster father and natural mother. The child is now 17 years of age and attending a highly specialized school in connection with which he receives psychiatric treatment for an alleged mental illness.
The petitioner asserts that although he has been strongly advised by phychiatrists to continue the child’s attendance in such school, the tuition of $9,800 is “ beyond the ability of your petitioner to provide.” He claims, however, that the natural father is a man of wealth and presumably well able to afford the requisite tuition were the adoption abrogated. Additionally, the claim is made that the adoption was brought about by the fraud of the natural father in concealing from petitioner the hereditary strains of mental illness present in the former’s family. Also petitioner alleges that the child has willfully deserted him on many occasions and has behaved in a most disrespectful manner.
Although this is ostensibly an abrogation proceeding, the allegations of fraud relate more specifically to applications to vacate and set aside adoption orders under section 114 of the Domestic Relations Law, which grants to this court the power to vacate orders of adoption “for fraud, newly discovered evidence or other sufficient cause” to be exercised in “like manner as a court of general jurisdiction exercises such powers The petitioner has commingled allegations relating to abrogation, a proceeding which treats the adoption as valid but seeks to set it aside because of subsequent events, and allegations relating to vacating or setting aside the adoption itself because of alleged invalidity.
*582 Taking the aspect of setting aside the adoption, the petition alleges a concealment of hereditary strains of mental illness present in the family of the natural father. There is no allegation in the petition as to inquiry being made by the foster father of the natural father concerning mental illness in the family, nor any other facts which would place the natural father in the position of being required to disclose such information. There is nothing to suggest any inquiry or concealment about the infant who was adopted, and the allegations refer only to concealment of mental illness in the family of the father of such infant, with no allegation that such information was ever requested or sought by the foster father.
Had there been an allegation in the petition that an inquiry as to the mental condition of the infant in question had been made, and material facts concealed, this court would have granted a hearing to determine the facts in relation thereto. Even in such a situation, however, the fraud which will suffice to vacate an order or judgment must be fraud in the very means by which the judgment was procured (Fuhrmann v. Fanroth, 254 N. Y. 479). “ The fraud must relate to matters other than the issues which could have been resolved in the action wherein the judgment was obtained and must be a fraud upon the court as distinguished from fraud between the parties.” (J. J. Miller Constr. Co. v. Berlanti Constr. Co., 197 N. Y. S. 2d 818, 819-820; see, also, Matter of Brundage, 134 N. Y. S. 2d 703, 710.)
The order of adoption and the papers upon which it was granted are in all respects proper and the statutory requirements fully satisfied. The court, at that time, determined on all the facts then before it, that the adoption was for the best moral and temporal interests of the child. There is no justification to now upset this formal adjudication based upon an alleged failure of the natural father, at the time of the adoption, to delineate the alleged mental aberrations of his family. Accordingly, that portion of the petition which predicates the relief requested upon allegations of fraud, is dismissed.
The remaining portions of the petition may more properly be said to deal with matters of abrogation. Abrogation, similar to an adoption itself, is purely statutory (Matter of Eaton, 305 N. Y. 162, 165). Specifically, sections 116 to 118 of the Domestic Relations Law grant such jurisdiction to this court. Section 116 deals with abrogation by consent and section 118 relates to abrogation of adoptions from authorized agencies. The latter section provides that a foster parent may apply for abrogation because of the “wilful desertion of such foster parent by such foster child or because of any misdemeanor or ill behavior of *583 such, child.” There is no corresponding ground in section 117, the sole remaining section dealing with abrogation. Since this proceeding does not deal with abrogation from an authorized agency, those allegations of desertion and general misbehavior on the part of the infant are dismissed. In any event, such desertion and misbehavior must be “ wilful ” according to the statute, and the petition is replete with indications that the acts of this child are far from rational or willful.
Section 117 of the Domestic Relations Law provides that a proceeding to abrogate may be brought by the foster child or any person on the ground of “ (a) cruelty, (b) misusage, (c) inability or refusal to support, maintain or educate such child, (d) an attempt to change or the actual making of change of or the failure to safeguard the religion of such child or (e) any other violation of duty on the part of the foster parents or parent toward such child.” While in Matter of Anonymous (185 Misc. 962), the Surrogate held that a foster parent could initiate such a proceeding under section 117, the dominant tenor and tone of a petition under this section would necessarily involve violations and derelictions of duty on the part of a foster parent. This is clear from the legislative intent of this section (Draftsman’s note, L. 1938, ch. 606). Petitioner seeks not to bring to this court’s attention any dereliction or violation of duty by himself as the foster parent, but merely his own alleged financial inability to properly provide for the child. The law has seen fit to raise the relationship of adoption to no less an elevated stature than that of the flesh and blood ties of parent and child (Domestic Relations Law, § 115), and the law surrounds this relationship with the strongest of safeguards from intrusion (Domestic Relations Law, § 114). To allow a foster parent to now retrace the steps he has taken toward culmination of this relationship on the ground of lack of financial means to properly support the child would be to set to naught the creation of law and establish a dangerous precedent.
Even if it be assumed that this court would have such jurisdiction, the affidavit of the respondent, which petitioner’s attorney stipulated could be considered on this motion, states that the natural mother has very substantial financial means of her own, and the child himself is one of the beneficiaries of a relatively large trust fund. This affidavit stands uncontradicted by the petitioner or the natural mother. The court’s prime concern in an abrogation proceeding is the welfare of the child. The special guardian reports that the petitioner’s attorneys furnished bim with a copy of a letter written by a psychiatrist which states that the child can be helped by a combination of *584 educational environment, psychiatric treatment, and contact with parents. This child has resided with his mother and foster father for most of his life, and obviously the contact with parents refers to them and not to the respondent. Undoubtedly, foisting upon the child at this late date a “ new ” father could lead to a host of disturbing elements, even more so in the mind of a child who is mentally ill.
For all of the above reasons, together with the court’s conviction that the welfare of this child dictates that he remain a part of the only family group he has known, the petition is dismissed.