44

[651 NYS2d 766]

In the Matter of ALEXANDRIA MARY, an Infant. DUANE S. et al.,
Respondents; CATHOLIC CHARITIES OF ROMAN CATHOLIC
DIOCESE OF SYRACUSE, NEW YORK, INC., Appellant.

Fourth Department, December 13, 1996

### APPEARANCES OF COUNSEL

*John A. Cirando,* Syracuse, for appellant.

*Tisdell, Moore, Walter & Bisby,* Syracuse *(Francis Walter* of counsel), for respondents.

*Lois A. Kriesberg, Law Guardian,* Syracuse.

### OPINION OF THE COURT

LAWTON, J. P.

Respondent appeals from an order of Family Court that denied its motion to dismiss the petition for adoption. Family Court neither conducted a hearing nor made a factual determination. Nevertheless, there is sufficient agreement to the underlying facts to permit this Court to determine the following question of law: whether Family Court properly entertained the petition for adoption. For the reasons herein stated, we conclude that Family Court should not have entertained the adoption petition because petitioners failed to exhaust their administrative remedies by seeking a fair hearing to review the determination of respondent, Catholic Charities of the Roman Catholic Diocese of Syracuse, New York, Inc., to terminate the preadoptive placement and remove the child from petitioners' home.

The facts can be succinctly summarized. Respondent placed the subject child in petitioners' home on December 13, 1995 under a preadoptive placement agreement. Respondent is an "authorized agency" as that term is defined in Domestic Relations Law § 109 (4), Social Services Law § 371 (10) (a) and 18 NYCRR 421.1 (e). The custody and guardianship of the child had been surrendered to respondent pursuant to a judicial surrender, in accordance with Social Services Law § 384. Petition-

ers applied to respondent for approval as an adoptive placement. An agreement was subsequently entered into between petitioners and respondent to place the child in their home as a preadoptive placement. That agreement provided in part that "[t]he legal adoption will take place after both Catholic Charities and we agree that it is in the child's best interest * * * . If at any time prior to legal adoption it is determined by the agency or by us that the child should be removed from our home, we will cooperate with the agency in carrying this out in a way that serves the best interest of the child in the judgment of the agency." In entering the placement agreement, respondent relied upon the facts set forth in petitioners' application for approval as adoptive parents and a home study it had completed. On February 5, 1996, and before any petition to adopt had been filed, petitioner Duane S. was arrested on criminal charges. Based upon the arrest and newly discovered facts involving alcohol and substance abuse by Duane S., respondent sought to remove the child from petitioners' home pursuant to the agreement. Petitioners were notified of that decision by letter dated February 23, 1996.

On March 25, 1996, petitioners obtained an order to show cause in Family Court granting them a temporary restraining order prohibiting respondent from removing the child from their custody. Simultaneously, petitioners filed a petition for adoption despite the requirement in the agreement that a petition for adoption be filed jointly with respondent. Respondent moved to dismiss the petition, asserting that, because of the criminal charges brought against Duane S. and his admitted substance abuse, it had made a proper determination to remove the child from the preadoptive placement. Respondent further asserted that, if petitioners wished to challenge that determination, their sole recourse was an administrative "fair hearing" (see, 18 NYCRR 421.15 [g]; 443.5; Social Services Law § 372-e), and that, at this juncture, Family Court should not entertain the adoption petition. Family Court denied respondent's motion to dismiss and ordered a "best interests hearing" on the adoption petition. That was error.

This case brings into focus the conflicting rights of an authorized agency and those granted to prospective adoptive parents under an adoption placement agreement.

Critical to this case is the issue whether an agency may determine in the first instance whether prospective adoptive parents should be permitted to apply for the adoption of a child entrusted to its care and custody. We conclude that the

agency may, subject to the rejected prospective parents' due process rights to seek administrative review of the determination through a fair hearing and subsequent judicial review through a CPLR article 78 proceeding. In that regard, the case of *Matter of O'Rourke v Kirby* (54 NY2d 8) is compelling. In *O'Rourke* (*supra*, at 14), the Court held that the proper procedure for reviewing an agency's denial of consent for adoption is through an administrative fair hearing and a subsequent CPLR article 78 proceeding.

Here, Family Court, in an effort to expedite this matter, chose to exercise its authority over the adoption under NY Constitution, article VI, § 13 (b) and Domestic Relations Law § 112-a by immediately determining whether adoption by petitioners is in the best interests of the child. In so doing, it precluded respondent from exercising its professional judgment whether to permit petitioners to apply for the adoption of a child surrendered to its care and custody. Additionally, no statutory provisions authorize petitioners to bypass their contractual agreement with respondent by petitioning for adoption when the agreement requires that respondent and petitioners jointly file an adoption petition. Therefore, petitioners' only remedy at this juncture is to challenge respondent's actions by way of a fair hearing.

Contrary to Family Court's concerns, this conclusion does not deprive Family Court of its ultimate "best interests" jurisdiction and divert that determination to the authorized agency. In *O'Rourke* (*supra*, at 14), the Court noted that the initial decision whether to consent to or file a petition for adoption in the first instance belongs to the agency and requires a best interests analysis. The propriety of that agency decision is subject to administrative review and subsequent review by Supreme Court in a CPLR article 78 proceeding, and any agency decision that was not in the best interests of the child would necessarily be arbitrary and capricious or unsupported by substantial evidence (*Matter of O'Rourke v Kirby, supra*, at 14). Thus, while Supreme Court will review an initial agency decision, Family Court will conduct a best interests analysis when a proper petition for adoption is presented to it for approval.

Authorized agencies play a major role in promoting adoptions and in assisting the courts in administering that important work. Their role should not be curtailed by precluding them from participation in the process under the guise of expediency.

The Law Guardian, who argues in support of affirmance, correctly asserts that recent legislation and court cases favor expediting adoption proceedings and that the controlling factor in all adoption proceedings must be the child's best interests (*see, Matter of Jacob*, 86 NY2d 651; Domestic Relations Law § 114). The best interests of the child is in fact the controlling factor under this holding and pursuant to *O'Rourke* (*supra*, at 14-15). The child's best interests would not be served by permitting a prospective adoptive parent, who, as found by Family Court, is not a foster parent, to petition for adoption in violation of the terms of a placement agreement. To nullify that part of the agreement that gives the agency the right to terminate the adoption process based on facts not disclosed to the agency at the time of the agreement, as advocated by petitioners and the Law Guardian, would only result in delays in placing a child for adoption. Any placement agency would be reluctant to place a child until it was certain that the prospective adoptive parents were unquestionably best suited for the child. Further, as respondent argues, to nullify that provision would foster deception by proposed adoptive parents when entering into placement agreements and would reward those who practice deception by granting them greater rights than they would have had if they had been truthful. In that vein, the Law Guardian candidly admits that, had petitioners truthfully completed their application, it is unlikely that respondent would have approved them as adoptive parents.

While it may be tempting to follow the expedited route fashioned by Family Court, to do so would disrupt procedures that have been in place for years and would ignore the expertise of respondent. There is no question that, had respondent denied petitioners' application for adoption in the first instance, Family Court would have lacked jurisdiction (*see, Matter of O'Rourke v Kirby, supra*). It is not unreasonable to permit an authorized agency, whose very purpose is to promote adoptions, to require that persons who seek to adopt through the agency agree as a term of the preadoptive placement that any petition for adoption must be jointly filed. Furthermore, it is reasonable for an agency to require the return of the child to its custody when that decision is warranted by unforeseen or previously unknown facts.

Finally, the concerns of petitioners in this case are premature in that the results of a fair hearing and/or subsequent CPLR article 78 proceeding may well be in their favor. By this decision, we express no opinion concerning the propriety of

respondent's decision not to join in the petition for adoption. Accordingly, the order appealed from should be reversed, respondent's motion granted, the petition for adoption dismissed, and the custody of the child returned to respondent subject to the right of petitioners to request a fair hearing within 10 days following service of a copy of the order of this Court with notice of entry.

In light of this holding, we do not address the issue of Family Court's denial of respondent's motion for recusal. Were we to reach that issue, we would conclude that the part of the order denying the motion for recusal should be affirmed.

FALLON, WESLEY and DAVIS, JJ., concur.

Order unanimously reversed, on the law, without costs, petition dismissed, motion granted and custody granted to respondent in accordance with the opinion by LAWTON, J. P. [As amended by unpublished order entered Mar. 5, 1997.]